

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 JUN -1 PM 4: 34

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BARNEY NEYLAND | * | CIVIL ACTION |
| VERSUS | * | NO. 00-106 |
| HYUNDAI MERCHANT MARINE (AMERICA), INC., ET AL. | * | SECTION "A" B |
| | * | MAGISTRATE (5) 5 |
| | * | |

## MOTION FOR SUMMARY JUDGMENT

NOW INTO COURT, through undersigned counsel, comes Sea Mild Shipping, Inc., Cosco Bulk Carriers Co. Ltd., and The West of England Shipowners Insurance Services Ltd. (collectively "COSCO"), and according to Federal Rule of Civil Procedure 56, moves this Honorable Court to enter a summary judgment in its favor and against plaintiff, Barney Neyland ("Plaintiff"), as COSCO did not breach any legal duty to Plaintiff, and accordingly, Plaintiff's claims against COSCO should be dismissed with prejudice, as a matter of law.

COSCO represents to the Court that with respect to its motion, there is no genuine issue of material fact and it is entitled to summary judgment as a matter of law.

NO:99518252.1

Fee
Process
X Dktd
CtRmDep
Doc. No

Respectfully submitted,

PHELPS DUNBAR LLP

By: _____
James H. Roussel (Bar No. 11496)
E. Martin McLeod (Bar No. 24846)
Canal Place
365 Canal Street • Suite 2000
New Orleans, Louisiana  70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130 or 9007

ATTORNEYS FOR SEA MILD SHIPPING, INC.
COSCO BULK CARRIERS CO., LTD., AND THE
WEST   OF   ENGLAND   SHIPOWNERS
INSURANCE SERVICES LTD.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have on this 1st day of June, 2005, served a copy of the foregoing on

all counsel of record via the United States Postal Service, properly addressed and postage prepaid.

_____

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **BARNEY NEYLAND** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 00-106** |
| **HYUNDAI MERCHANT MARINE (AMERICA), INC., ET AL.** | * | **SECTION "A" B** |
| | * | **MAGISTRATE (3) 5** |
| | * | |

## NOTICE OF MOTION

TO:    Thomas M. Discon
       Discon Law Firm
       424 North Causeway Boulevard
       Suite A
       Mandeville, Louisiana 70448

       Collins C. Rossi
       2450 Severn Avenue, Suite 312
       Metairie, LA 70001

PLEASE TAKE NOTICE that undersigned counsel for Sea Mild Shipping, Inc., Cosco Bulk

Carriers Co. Ltd., and The West of England Shipowners Insurance Services Ltd. (collectively

"COSCO") will bring the attached motion for hearing on June 22, 2005, at 9:00 a.m., before the

1

Honorable ~~Jay C. Zainey~~, United States District Judge for the Eastern District of Louisiana, 500 Poydras Street, New Orleans, Louisiana.

Respectfully submitted,

PHELPS DUNBAR LLP

By: _____

James H. Roussel (Bar No. 11496)
E. Martin McLeod (Bar No. 24846)
Canal Place
365 Canal Street • Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Facsimile: (504) 568-9130 or 9007

ATTORNEYS FOR SEA MILD SHIPPING, INC.
COSCO BULK CARRIERS CO., LTD., AND THE
WEST OF ENGLAND SHIPOWNERS
INSURANCE SERVICES LTD.

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 1st day of June, 2005, served a copy of the foregoing on all counsel of record via the United States Postal Service, properly addressed and postage prepaid.

_____

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **BARNEY NEYLAND** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 00-106** |
| **HYUNDAI MERCHANT MARINE** | * | **SECTION "A" B** |
| **(AMERICA), INC., ET AL.** | * | **MAGISTRATE (5) 5** |
| | * | |

## STATEMENT OF UNCONTESTED FACTS

In connection with its Motion for Summary Judgment seeking to dismiss the claim of plaintiff, Barney Neyland ("Plaintiff"), Sea Mild Shipping, Inc.("Sea Mild Shipping"), COSCO Bulk Carriers Co., Ltd. (COSCO"), and The West of England Shipowners Insurance Services Ltd. ("collectively, "COSCO"), submit the following statement of uncontested material facts pursuant to Uniform Local Rule 56.1:

1.      This case involves an alleged low back injury to Plaintiff, a longshoreman employed by Transocean Terminal Operators ("TTO"),which occurred on January 15, 1999, on the SEA MILD. The SEA MILD is a 1985-built Panamanian flagged, general bulk carrier of 22,145 gross register tons, which at all times material herein, was owned by Sea Mild Shipping, Inc. and managed by COSCO Bulk Carriers Co., Ltd.

2.      On January 13, 1999, at approximately 1400 hours, the SEA MILD berthed starboard side at the Nashville Avenue wharf to discharge a cargo of steel angle iron, beams, and pipe. On January 14, at 0700 hours, TTO stevedores commenced discharging of the steel cargo

using her No. 4 crane. The discharge was uneventful and at 2300 hours, discharging operations were halted for the day.

3.    On January 15, at 0700 hours, discharge operations recommenced and Plaintiff was assigned by TTO to use the vessel's No. 4 crane, a type of crane with which Plaintiff was very familiar.[1] At that time, Plaintiff entered the No. 4 crane cabin and started it, at which time the crane's boom, which was at a 30° angle to the wharf, immediately fell 10-15'. After the crane's boom fell, Plaintiff shut the crane off and informed his TTO foreman, who advised Plaintiff not to restart the crane until the vessel's crew inspected it. A short time thereafter, an unidentified crewmember arrived at the crane cabin, started the crane, and operated it without any problem.[2] This crewmember tested the crane for 5 - 10 minutes and at all times during this period the crane was, according to plaintiff, "working fine."[3] Consequently, Plaintiff's foreman permitted the discharging operations to begin again.

4.    At 0720-0730 hours, plaintiff stepped back into the crane cabin and then discharged (without incident) to the wharf between 15 - 20 loads of steel beams.[4]

5.    At 0835 hours, Plaintiff was discharging 4 bundles of steel beams, which weighed 18.68 metric tons. The weight of the load was well within the crane's capacity.[5] Unexpectedly, the No. 4 wire rope cargo runner parted, causing the beams to fall several feet to the wharf. One

---

[1] Exhibit "A", Plaintiff's deposition, at p. 30, lines 1-11; p. 31, lines 1-5; and p. 32, lines 1-11.

[2] Exhibit "A", Plaintiff's deposition, at p. 27, lines 2-6; p. 28, lines 23-25; and p. 29, lines 1-25.

[3] Exhibit "A", Plaintiff's deposition, at p. 34, lines 3-20.

[4] Exhibit "A", Plaintiff's deposition, at p. 31, lines 18-25.

[5] Exhibit "A", Plaintiff's deposition, at p. 51, lines 1-25 and p. 52 lines 1-2.

end of the wire rope cargo runner struck the No. 4 crane cabin's front window glass, where

Plaintiff was located. At the time, the discharge operations were under the complete control of

TTO and the vessel's crew was not involved in the operations.[6]

     6.     The cable at issue was tested and inspected by the manufacturer on March 23,

1995.[7] Thereafter, it was purchased for the SEA MILD and placed in storage for two and a half

years, suitably lubricated to prevent corrosion, and was eventually placed into service on

November 25, 1998, less than two months prior to the accident.[8] A Certificate of Installations

Registration dated August 23, 1994, certified that the vessel's "cargo handling appliances", which

include the crane and its machinery (other than the cable at issue which was in storage at the

time), met the requirements of the vessel's classification society Nippon Kaiji Kyokai.[9]

     7.     Following the accident, Mr. Dan McKinnon of Messrs. Technical Maritime

Associates, Inc. attended the vessel on COSCO' behalf on January 15, 1999. Because no defects

were noted on the sheaves or winch drums on the No. 4 crane and because the crane was not

overloaded at the time of the incident, Mr. McKinnon opined that the wire rope cargo runner

parted due to a manufacturing defect.[10]

---

[6] Exhibit "B", Declaration of Wang Chun Jiu, Chief Officer, ¶ 14.

[7] Exhibit "B," Declaration of Wang Chun Jiu, Chief Officer, attaching as Exhibit "A" Register of Shipping of The People's Republic of China Certificate of Marine Product concerning the cable.

[8] Exhibit "B", Declaration of Wang Chan Jiu, Chief Officer, ¶ 13.

[9] Nippon Kaiji Kyokai Certificate of Installations Registration dated August 23, 1994, attached as Exhibit "C" of Exhibit "B", Declaration of Wang Chun Jiu, Chief Officer.

[10] Exhibit "C", survey report of Messrs. Technical Maritime Associates, Inc., dated January 15, 1999, at p.4.

8.    At no time prior to the incident at issue did COSCO, or any of the vessel's crew, have any knowledge- or any reason to know- of any problem pertaining to the No. 4 crane cable.[11]

Respectfully submitted,

PHELPS DUNBAR LLP

By: _____
James H. Roussel (Bar No. 11496)
E. Martin McLeod (Bar No. 24846)
Canal Place
365 Canal Street • Suite 2000
New Orleans, Louisiana  70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130 or 9007

ATTORNEYS FOR SEA MILD SHIPPING, INC.,
COSCO BULK CARRIERS CO., LTD., AND THE
WEST OF ENGLAND SHIPOWNERS
INSURANCE SERVICES LTD.

---

[11] Exhibit "B", Declaration of Wang Chan Jui, Chief Officer, ¶ 11.

NO:99520256.1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have on this 1st day of June, 2005, served a copy of the foregoing on all counsel of record via the United States Postal Service, properly addressed and postage prepaid.

_____

NO:99520256.1

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **BARNEY NEYLAND** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 00-106** |
| **HYUNDAI MERCHANT MARINE (AMERICA), INC., ET AL.** | * | **SECTION "A"** |
| | * | **MAGISTRATE (3)** |
| | * | |

## ORDER

Considering the foregoing motion,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Motion for Summary

Judgment filed on behalf of Sea Mild Shipping, Inc., Cosco Bulk Carriers Co. Ltd., and The West

of England Shipowners Insurance Services Ltd. is hereby GRANTED.

New Orleans, Louisiana, this _____ day of _____, 2005.


_____
UNITED STATES DISTRICT COURT JUDGE

NO:99518252.1

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **BARNEY NEYLAND** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 00-106** |
| **HYUNDAI MERCHANT MARINE (AMERICA), INC., ET AL.** | * | **SECTION "✗" B** |
| | * | **MAGISTRATE(S) 5** |
| | * | |

## MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

Sea Mild Shipping, Inc.("Sea Mild Shipping"), COSCO Bulk Carriers Co., Ltd. (COSCO"), and The West of England Shipowners Insurance Services Ltd. ("The West of England") (collectively, "Defendants") submit this memorandum in support of their motion for the Court to enter a summary judgment in their favor and against plaintiff, Barney Neyland ("Plaintiff"). For the reasons set forth, and according to the undisputed evidence and applicable law, Defendants urge the Court to grant the relief sought.

NO:99518251.1

## I.    BACKGROUND

This case involves an alleged low back injury to Plaintiff, a longshoreman employed by Transocean Terminal Operators ("TTO"),which occurred on January 15, 1999, on the SEA MILD. The SEA MILD is a 1985-built Panamanian flagged, general bulk carrier of 22,145 gross register tons, which at all times material herein, was owned by Sea Mild Shipping, Inc. and managed by COSCO Bulk Carriers Co., Ltd.

On January 13, 1999, at approximately 1400 hours, the SEA MILD berthed starboard side at the Nashville Avenue wharf to discharge a cargo of steel angle iron, beams, and pipe. On January 14, at 0700 hours, TTO stevedores commenced discharging of the steel cargo using her No. 4 crane. The discharge was uneventful and at 2300 hours, discharging operations were halted for the day.

On January 15, at 0700 hours, discharge operations recommenced and Plaintiff was assigned by TTO to use the vessel's No. 4 crane, a type of crane with which Plaintiff was very familiar.[1] At that time, Plaintiff entered the No. 4 crane cabin and started it, at which time the crane's boom, which was at a 30° angle to the wharf, immediately fell 10-15'. After the crane's boom fell, Plaintiff shut the crane off and informed his TTO foreman, who advised Plaintiff not to restart the crane until the vessel's crew inspected it. A short time thereafter, an unidentified crewmember arrived at the crane cabin, started the crane, and operated it without any problem.[2] This crewmember tested the crane for 5 - 10 minutes and at all times during this period the crane was, according to plaintiff, "working fine."[3] Consequently, Plaintiff's foreman permitted the discharging operations to begin

---

[1] Exhibit "A", Plaintiff's deposition, at p. 30, lines 1-11; p. 31, lines 1-5; and p. 32, lines 1-11.

[2] Exhibit "A", Plaintiff's deposition, at p. 27, lines 2-6; p. 28, lines 23-25; and p. 29, lines 1-25.

[3] Exhibit "A", Plaintiff's deposition, at p. 34, lines 3-20.

again.  At 0720-0730 hours, plaintiff stepped back into the crane cabin and then discharged (without incident) to the wharf between 15 - 20 loads of steel beams.[4]

At 0835 hours, Plaintiff was discharging 4 bundles of steel beams, which weighed 18.68 metric tons.  The weight of the load was well within the crane's capacity.[5]  Unexpectedly,  the No. 4 wire rope cargo runner parted, causing the beams to fall several feet to the wharf.  One end of the wire rope cargo runner struck the No. 4 crane cabin's front window glass, where Plaintiff was located.  At the time, the discharge operations were under the complete control of TTO and the vessel's crew was not involved in the operations.[6]

The cable at issue was tested and inspected by the manufacturer on March 23, 1995.[7]  Thereafter, it was purchased for the SEA MILD and placed in storage for two and a half years, suitably lubricated to prevent corrosion, and was eventually placed into service on November 25, 1998, less than two months prior to the accident.[8]  A Certificate of Installations Registration dated August 23, 1994, certified that the vessel's "cargo handling appliances", which include the crane and its machinery (other than the cable at issue which was in storage at the time), met the requirements of the vessel's classification society Nippon Kaiji Kyokai.[9]

---

[4] Exhibit "A", Plaintiff's deposition, at p. 31, lines 18-25.

[5] Exhibit "A", Plaintiff's deposition, at p. 51, lines 1-25 and p. 52 lines 1-2.

[6] Exhibit "B", Declaration of Wang Chun Jiu, Chief Officer, ¶ 14.

[7] Exhibit "B," Declaration of Wang Chun Jiu, Chief Officer, attaching as Exhibit "A" Register of Shipping of The People's Republic of China Certificate of Marine Product concerning the cable.

[8] Exhibit "B", Declaration of Wang Chan Jiu, Chief Officer, ¶ 13.

[9] Nippon Kaiji Kyokai Certificate of Installations Registration dated August 23, 1994, attached as Exhibit "C" of Exhibit "B", Declaration of Wang Chun Jiu, Chief Officer.

Following the accident, Mr. Dan McKinnon of Messrs. Technical Maritime Associates, Inc.

attended the vessel on COSCO' behalf on January 15, 1999. Because no defects were noted on the

sheaves or winch drums on the No. 4 crane and because the crane was not overloaded at the time of

the incident, Mr. McKinnon opined that the wire rope cargo runner parted due to a manufacturing

defect.[10] At no time prior to the incident at issue did COSCO, or any of the vessel's crew, have any

knowledge- or any reason to know- of any problem pertaining to the No. 4 crane cable.[11]

## II.    LAW AND ANALYSIS

### A.    *Summary Judgment*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be

rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue s to any material fact and that

the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Once the

moving party carries its burden pursuant to Rule 56(c), the nonmoving party must come forward with

specific facts showing that there is a genuine issue for trial.[12] That burden is not satisfied by creating

merely some metaphysical doubt as to the material facts, by conclusory allegations, unsubstantiated

assertions or by only a scintilla of evidence.[13]  The materiality of facts is determined by "the

substantive law's identification of which facts are critical and which facts are irrelevant."[14]

---

[10] Exhibit "C", survey report of Messrs. Technical Maritime Associates, Inc., dated January 15, 1999, at p.4.

[11] Exhibit "B", Declaration of Wang Chan Jui, Chief Officer, ¶ 11.

[12] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

[13] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(citations omitted).

[14] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Therefore, a fact is material if it "might affect the outcome of the suit under the governing law."[15] A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[16] "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."[17]

In order to demonstrate that summary judgment should not lie, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file," designate 'specific facts showing that there is a genuine issue for trial.'"[18] A court will resolve factual controversies in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[19] A court will not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.[20]

> [T]he plain language of Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the

---

[15] *Id.*

[16] *Id.*

[17] *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356 (internal quotation omitted).

[18] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Auguster v. Vermillion Parish School Board*, 249 F.3d 400, 402 (5th Cir. 2001).

[19] *Little*, 37 F.3d at 1075.

[20] *See id.* (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990)).

nonmoving party's case necessarily renders all other facts immaterial.[21]

As shown below, Defendants are entitled to summary judgment dismissing Plaintiff's claims against them because according to the undisputed facts no legal duty owed to Plaintiff was breached.

**B.**    *Plaintiff states no claim against Defendants for an alleged breach of Scindia duties to him.*

In this case, Plaintiff alleges that he was a longshoreman injured aboard a vessel that was afloat on the navigable waters of the United States. Accordingly, as an employee of TTO, Plaintiff alleges that he is covered by the Longshore and Harbor Worker's Compensation Act ("LHWCA"), 33 U.S.C. §901, *et seq.*[22] His claims against Defendants are in their capacity as the owner, operator, and/or insurer of the SEA MILD and for "vessel negligence" under 905(b) of the LHWCA. These claims of Plaintiff are governed by the general maritime law.

The primary responsibility for the safety of a longshoreman rests upon the employer/stevedore. Once the stevedore begins working, the vessel owner/operator has no general duty to discover dangerous conditions that develop within the confines of their operations.[23] The duty of a vessel owner or operator to LHWCA-covered employees of independent contractors working aboard a vessel is governed by the principals enunciated in *Scindia Steam Navigation Co., Ltd. v. De Los Santos,* 451 U.S. 156, 101 S.Ct. 1614 (1981). To prove "vessel negligence", a

---

[21] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Munoz v. Orr*, 200 F.3d 291, 307 (5th Cir. 2000) ("A complete failure of proof as to one element requires summary judgment against the entirety of the claim") (citation omitted).

[22] Original Petition for Damages, ¶ II.

[23] *C.K. Greenwood v. Societe Francaise de*, 111 F.3d (5th Cir. 1997) cert. denied 522 U.S. 95, 118 S.Ct. 558 (1997); *Lormand v. Superior Oil Co.*, 845 F.2d 536 (5th Cir. 1987); *Coleman v. MC Shipping*, 2000 WL 156903 (E.D. La. 2000).

longshoreman must prove that a vessel owner/operator breached one of the following three duties owed to him:

    a.    To warn the worker that the vessel has hidden defects, which the owner knew or should have known, when the vessel was turned over to the worker ("the turnover duty to warn");

    b.    To exercise reasonable care during the operations to make the vessel safe if the vessel owner actively participates in the operation, maintains control over the area, or such a duty as imposed by custom or law (the "active control duty"); and

    c.    To intervene in the operation of the maritime worker when the vessel owner has actual knowledge of a hazard created by the ship or its gear and the vessel owner learns that the stevedore is acting unreasonably in failing to protect the worker against the hazard (the "duty to intervene").[24]

The *Scindia* duties are exceptions to the general rule that the primary responsibility for protecting longshoremen us the party best able to prevent injuries– the employer.[25]

### 1.    COSCO did not breach any "active operation duty" to Plaintiff.

Defendants' active control duty would apply if the vessel's crew actively participated in TTO's work or maintained control over the work barge.[26]  In the instant case, however, there is no evidence that Sea Mild Shipping participated in TTO's work or maintained control over the stevedoring operations on the SEA MILD.  TTO's started its work for on the SEA MILD January 14, 1999 and Plaintiff's alleged accident occurred on January 15, 1999.  As of the alleged accident date, there is no factual dispute that the SEA MILD had already been transferred to the control of Plaintiff's employer, TTO.  Indeed, Plaintiff himself testified that there were only one or two

---

[24] *Scindia Steam Navigation Co. Ltd. v. De Los Santos*, 451 U.S.1 56, 101 S.Ct. 1614 (1981); *Hill v. Texaco, Inc.*, 674 F.2d 447, 451 (5th Cir. 1982).

[25] *Garry v. Exxon Mobil Corp.*, 2004 WL 2367706 (E.D. La. 2004).

[26] *Hill v. Texaco, Inc.*, 674 F.2d at 451.

crewmembers on deck and that they were no where near him.[27]  Accordingly, none of the vessel's

crew interfered with TTO's work and COSCO did not breach any active operations duty to Plaintiff.

> **2.      COSCO did not breach any duty to intervene in TTO's operation.**

A vessel owner is required to intervene when the owner has actual knowledge of a dangerous

condition and actual knowledge that the stevedore, in the exercise of "obviously improvident"

judgment, has failed to remedy the hazard.[28]  To prevail on a claim that the vessel breached the duty

to intervene, the longshoreman must show not only that the shipowner had actual knowledge of the

hazard and of the stevedore's continuing hazardous operations, but also (1) that the vessel owner had

actual knowledge that the hazard posed an unreasonable risk of harm, and (2) that the vessel owner

had actual knowledge that it could not rely on the stevedore to protect its employees and that if

unremedied the condition posed a substantial risk of injury.[29]  The duty to intervene is narrowly

construed and requires more than mere knowledge of a dangerous condition.[30]  As stated by the Fifth

Circuit:

> To impose a duty to intervene on the shipowner, respecting dangers
> not created by it which are obvious to the stevedore's employees and
> arise during and in the area of the stevedore's operations, something
> more is required than the mere shipboard location of the dangerous
> situation and the shipowner's knowledge of it.[31]

---

[27] Exhibit "A", Plaintiff's deposition, at 72, lines 13-25; and p. 73, lines 1-3.

[28] *Greenwood*, 111 F.3d at 1248 (citations omitted); *Singleton*, 79 F.3d at 28.

[29] *See Greenwood*, 111 F.3d at 1248 (citing *Randolph v. Laeisz*, 896 F.2d 964, 971 (5th Cir. 1990)).

[30] *Greenwood*, 111 F.3d at 1249; *Singleton*, 79 F.3d at 28.

[31] *Singleton*, 79 F.3d at 28 (quoting *Futo v. Lykes Bros. Steamship Co.*, 742 F.2d 209, 215 (5th Cir. 1984) (further citations omitted).

For the expert stevedore's judgment to appear "obviously improvident," that expert stevedore must demonstrate that a condition exists that is so hazardous that anyone can tell that continued operations create an unreasonable risk of harm even when the stevedore's expertise is taken into account.[32]  In short, "'[o]nce the loading operations have begun, the vessel owner can be held liable for injuries to employees of the stevedore resulting from open and obvious dangers only in the event of actual knowledge of the danger *and* actual knowledge that he cannot rely on the stevedore to remedy the situation.'"[33]

In this case, there is no evidence that COSCO had any actual knowledge of any hazard on the SEA MILD.  Certainly, no one from TTO ever complained to either Sea Mild Shipping or COSCO about any dangerous condition pertaining to the No. 4 crane.  Secondly, there is also no evidence that TTO was acting unreasonably to remedy any alleged hazards on the SEA MILD, and moreover, there is no evidence that Sea Mild Shipping or COSCO had any knowledge that TTO was acting unreasonably.  In fact, COSCO submits that there was no hazard on the barge at all.  Rather, the evidence is undisputed that the cable parted due to a defect, the existence of which was not known by TTO, Sea Mild Shipping, COSCO, or any other person or entity.  As such, COSCO did not breach any duty to intervene in TTO's operations.

### 3.    COSCO did not breach any turnover duty to warn Plaintiff of any hidden defects.

The turnover duty relates to the condition of the ship upon commencement of the stevedore's operations and it requires a vessel owner to exercise due care under the circumstances to have the vessel and its equipment in such a condition that a worker can perform his duties with reasonable

---

[32] *See Greenwood*, 111 F.3d at 1249.

[33] *Williams v. M/V SONORA*, 985 F.2d 808, 813 (5th Cir. 1993) (quoting *Helaire v. Mobile Oil Corp.*, 709 F.2d at 1038-39 (5th Cir. 1983) (emphasis in original)).

safety.[34]  A vessel owner may be liable for a breach of the turnover duty "if the vessel owner *fails to warn* on turning over the ship *of hidden defects* of which he should have known."[35]  Therefore, an exception to the turnover duty exists if the defect causing the injury is open and obvious.[36]  A hazard is considered open and obvious if the longshoreman knew of the condition or defect.[37]  However, the exception does not apply, and a shipowner may be liable for a breach of the turnover duty, if the longshoreman's only alternatives to facing such a hazard are unduly impracticable or time-consuming or would force him to leave the job.[38]

Although most turnover duty cases concern the condition of the ship, itself, or of ship equipment used in stevedoring operations, the turnover duty to warn may extend to certain latent hazards in the cargo stow.[39]  A hidden defect in this context is a hazard "that would be neither obvious to nor anticipated by a competent stevedore in the ordinary course of cargo operations."[40]  Additionally, the turnover duty to warn "is confined to latent hazards that 'are known to the vessel or should be known to it in the exercise of reasonable care.'"[41]  Absent a contract provision, positive law or custom to the contrary, "a vessel 'has no general duty by way of supervision or inspection to exercise reasonable care to discover dangerous conditions that develop within the confines of the

---

[34] *See Howlett v. Birkdale Shipping Co.*, 512 U.S. 92, 98, 114 S.Ct. 2057, 2063, 129 L.Ed.2d 78 (1994) (duty applies "upon the commencement of stevedoring operations").

[35] *Greenwood v. Societe Francaise De*, 111 F.3d 1239, 1245 (5th Cir. 1997) (emphasis in original).

[36] *See Moore*, 353 F.2d at 376, *Greenwood*, 111 F.3d at 1245; *Pimental v. LTD Canadian Pac. Bul*, 965 F.2d a13, 16 (5th Cir. 1992).

[37] *Greenwood*, 111 F.3d at 1246.

[38] *Moore*, 353 F.3d at 381; *Greenwood*, 111 F.3d at 1248; *Pimental*, 965 F.2d at 16 (citations omitted).

[39] *Howlett*, 512 U.S. at 99, 114 S. Ct. At 2064.

[40] *Id.*

[41] *Id.* at 99-100, 114 S.Ct. at 2064 (quoting *Scindia*, 451 U.S. at 167, 101 S. Ct. At 1622).

cargo operations that are assigned to the stevedore.'"[42] The limitations on the vessel's turnover duty rest upon the vessel's justifiable expectation that the stevedore will perform with reasonable competence in ensuring the safety of cargo operations and the fact that the stevedore is in the best position to avoid accidents during such operations.[43] "[S]hipowners engage a stevedore for its expertise in cargo operations and are entitled to assume that a competent stevedore will be able to identify and cope with defects in the stow."[44] In sum, the scope of the vessel owner's duties with respect to latent defects in the cargo stow is narrow "[b]ecause the vessel does not exercise the same degree of operational control over, and does not have the same access to, the cargo stow."[45]

In this case, the evidence is undisputed that SEA MILD interests were not aware nor should they have been aware of any defect in the cable despite the exercise of reasonable care to maintain the SEA MILD in its class and to ensure that the vessel's equipment remained in good condition. The cable was only in operation less than two months before the incident occurred. The discharge operations were performed without incident on January 14, 1999. After the initial problem that Plaintiff experienced when he started up the crane on January 15, 1999, no other problems with the crane were experienced until the incident that is the subject of this lawsuit occurred.[46]

For these reasons, it is patently clear that COSCO did not breach its turnover duty to warn Plaintiff of a hidden defect aboard the SEA MILD.

---

[42] *Id.* at 101, 114 S.Ct. at 2064-65 (quoting *Scindia*, 451 U.S. at 172, 101 S.Ct. at 1624).

[43] *Id.* at 101, 114 S. Ct. At 2065 (citations omitted).

[44] *Id.* at 104, 114 S. Ct. At 2066.

[45] *Id.* at 105, 114 S. Ct. At 2067.

[46] Exhibit "A", Plaintiff's deposition, at p. 34, lines 18-25; p. 35, lines 1-3; and p. 50, lines 1-11.

## III.    CONCLUSION

Sea Mild Shipping, as the owner of the SEA MILD, and COSCO, as the operator, did not breach any of its *Scindia* duties to plaintiff. The cable at issue had only been placed in service for less two months and was fully within all certificates on the vessel. Further, at the time of the accident, the control of the SEA MILD has been transferred to TTO, such that it had the sole obligation to ensure that its operations were conducted safely. Similarly, there is no indication that TTO conducted its work in an unsafe manner, and COSCO had no duty to intervene in TTO's work. For these reasons, COSCO is entitled to summary judgment against Plaintiff, dismissing his claims with prejudice.

Respectfully submitted,

PHELPS DUNBAR LLP

By:    _____
James H. Roussel (Bar No. 11496)
E. Martin McLeod (Bar No. 24846)
Canal Place
365 Canal Street • Suite 2000
New Orleans, Louisiana  70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130 or 9007

ATTORNEYS FOR SEA MILD SHIPPING, INC., COSCO BULK CARRIERS CO., LTD., AND THE WEST OF ENGLAND SHIPOWNERS INSURANCE SERVICES LTD.

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 1st day of June, 2005, served a copy of the foregoing on all counsel of record via the United States Postal Service, properly addressed and postage prepaid.

_____